Next case is Elizabeth Somers v. Department of Veterans Affairs, 2018-14-27. We're ready when you are, Mr. Vogelsang. Mr. Vogelsang, do you challenge the MSPB's determination as to the second car factor regarding retaliatory animus? Yes. Where is that in the blue brief? It is our opinion that the car factors 1 and 2 were merged. So in the appellant's brief, we do challenge, beginning on page 22, the entirety of the agency's ability to prove by clear and convincing the fact that it- Where do you mention the second car factor? The car factor is not specifically mentioned in the briefs, but if you look at the judge's decision, she merges car factor 1 and car factor 2. So our argument on car factor 1 is attributable to car factor 2. And so far, she focuses on the strength of the NPSB board decision. So you merged 1 and 2. In the blue brief at 24, you argue, quote, the complaints against Ms. Somers, I'm answering that, were untrue, exaggerated, and taken out of context regarding termination, rendering termination inappropriate. You don't cite any evidence for that proposition. Why shouldn't we find the argument waived? I believe the argument is not waived, given the content and language of the decision from the MSPB itself, that the language is one and the same. In favor of the car factor 2, it's car factor 1. If we were to consider the evidence, aren't you just asking us to reweigh the evidence already considered by the MSPB as regards 1 and 2? I'm letting you merge them for purposes of this question. Well, yes, and that is part of what the standard review for the Federal Circuit is, is that you are entitled to determine whether the judge had an abuse of discretion. That's not reweighing. Well, it's the issue here is... It's a highly deferential standard. Well, yes, but the information provided in the record shows that the judge ignored evidence as well as actually got the facts wrong. She also misapplied the law. And so these are reviewable decisions. In the blue brief at 26 note 2, you argue that the MSPB improperly denied Ms. Summers' attempts to introduce post-removal comparator evidence. What was that evidence? Where is it? In terms of where is the evidence in the record? Where do you at least make a record of the offer of that evidence? Yes, that is included in... I've got that. Okay. What was it? Say that again? What was it? There were other employees... That's not shown. There were other employees who had complaints about the comparator, the other nurse case manager at the VA. There were also evidence that the employees who supported Ms. Summers, who challenged allegations against her, were retaliated after the termination. The AJ found not only that it was barred, but that, quote, it is not substantially similar. Do you argue in the blue brief that the post-removal comparator situation is substantially similar? And where do you make that argument? We do not make the argument given the evidence was excluded. Okay. Counsel, wasn't there substantial evidence for the AJ's conclusion that she would have been removed even absent the protective disclosures because of her yelling, bullying, intimidating, demeaning, confrontational behavior? The evidence, if looking outside just the adjectives and looking at the context of those adjectives, the record shows that the criticisms of Ms. Summers were the fact that she had 90-minute morning meetings, that she accounted for employees' time, that she reviewed emails and wanted to be copy on them if they left the department, as well as asking her employees... This is a factual determination by the AJ that she would have been removed anyway for these reasons. It's not for us to balance them and look at her excuses. I do believe that her decision is unsupported by the evidence. In your answer, you're saying, if you unplug all the bad things that people said she did, then, hey, there's nothing wrong here. It's a slight tweak, Your Honor. It's the fact that the adjectives, the cursory adjectives... Adjectives, as in, she yelled at me. Well, that's not an adjective, exactly. Or she reduced someone to tears. That's not an adjective, exactly. Well, I guess those claims, outside the context in which they were done, removes the support of the evidence. That the substantial evidence does show that, given the context, these situations show that Ms. Summers was simply doing her job, managing a department that was delayed by over a year to open. Do you dispute that seven employees complained about Ms. Summers on the same day? I do not dispute that happened. I dispute that those employees were specifically requested and encouraged and convinced to bring those complaints on that day. Where's that? That is in the judge's decision. That they were convinced to do it? Correct. The judge's decision at Appendix 25, the judge does cite to the fact that the supervisor encouraged another subordinate to convince others in the department to come speak. Well, there's a difference between convincing them to come speak and convincing them to say derogatory things. I understood the administrative judge to have been saying that they were encouraged to report the derogatory things that they felt. That is true. Is that a fair characterization? Correct. Okay. But the same discriminator or retaliator, excuse me in this case, did not do the same encouragement of our named comparator who had complaints against her over the span of ten months. The record provides written signed statements from approximately ten employees about your client. Is there evidence on the record about how many written complaints were made about the alleged comparator? No, Your Honor. I believe most of those complaints were verbal. How many people did Ms. Summers supervise in the course of her work? I mean, at any given time? At any given time, I believe the estimate was between ten to fifteen. So it was actually half or less than half of her direct reports who raised the complaints. So it did change over time. From ten to fifteen and ten of them, you have ten written statements? Not all ten of the statements were from her direct reports. I do believe... You mean she was mean to people to whom she didn't directly report? Well, the accusations in the record are she acted with urgency because the surgical center was delayed and it was the context of her protective disclosures was trying to avoid that delay. So her urgency, as the record says, it was her acting with an urgency, wanting to get the center open, the surgical center, excuse me, open, was what the record shows maybe rubbed people the wrong way. In the gray brief at fourteen, you argue that the MSPB improperly based its decision that the complaints against Summers were more serious than those against the comparator. Upon the opinion of a named retaliator, and then the name of that person, is it your position that it is improper for the MSPB to rely on evidence from a named retaliator? And if so, what's your support authority for that? Well, the argument is it has to be taken maybe with the proverbial grain of salt. So it's a weight of the evidence? It is a weight of the evidence. It is also given the fact that the judge actually stated... But we've already discussed the weight of the evidence question with you. Correct. But in terms of how the judge made a determination, she found that the retaliator had a reasonable belief that the accusations against Ms. Summers were true. That's not clear and convincing. And so that's where the appellant gets on the shifting of the burden and shifting of the weight is that the appellant now has to disprove by clear and convincing the agencies in legitimate business reason, whereas the agency only has to have a reasonable belief of legitimate reason, flipping the burden of the Eligible Protection Act on its proverbial head. And this is at Appendix 33, which is part of the decision, where she finds that the This also does relate to... Well, the record... The way I would think you would factor clear and convincing evidence into that assessment is to say that there is clear and convincing evidence supporting the reasonableness of the belief, right? Isn't that the way one would articulate that? If you brought clear and convincing evidence from the beginning of the opinion when the that this is the standard to bear on a particular piece of critical piece of evidence. I wouldn't challenge you on that if that's what the decision was clear and what was done. Would you disagree that the MSPB, after confirming that the VA had met its burden of proof, then considered whether any of your client's evidence cut against that conclusion? Isn't that what they did? I do want to answer a question. I want to note that I'm running into my rebuttal time, so I do want to answer the question. You can answer it. Please answer the question. The appellant's position is that, yes, the agency should consider evidence that would challenge the agency's position. The concern appellant has in this case is the judge did not consider all of the evidence, only the evidence that she felt supported the agency and then discounted some other evidence. But that's not answering your burden of proof argument. That's where I was directing you. Well, for the burden of proof is for the agency to meet its clear and convincing standard, a proffer, the judge must review all the evidence. Otherwise, it is the nitpicking of particular facts from the record. I understand your... I would like to reserve some time for rebuttal. We will save you time. Thank you very much. Mr. Palkey. Good morning. May it please the court. This court's review of the MSPB's decision is cabin to whether or not substantial evidence supports the MSPB's finding of clear and convincing evidence supported the agency's decision. And I think that when the court considers the really exemplary administrative judge opinion, a 40-page opinion here, it is clear that that hurdle is met. The substantial evidence hurdle is met. The administrative judge walked through... What's the key finding that you would have been removed anyway? I think that's correct, Your Honor. The standard gets stated in lots of technical ways, but when one looks at the jurisprudence, it usually comes down to that fundamental practical question. Would this have happened anyway? And here, when you go through the administrative judge's process, and really that opinion enables a reader to walk through the process with the administrative judge. She considers all of the evidence. She applies the standards. She reaches conclusions about what the evidence the agency presented showed. She questions and asks questions about some of the allegations that Ms. Summers raises, about people conspiring against her, about people lying. She considers witnesses that were presented on her behalf, and she goes through their testimony. She looks at the presentation of the Nurse Professional Standards Board. Were all the witnesses presented there? Did Ms. Summers have an opportunity to present her own witnesses? And she goes through that process again and again. She reaches a conclusion under each CAR Factor that the agency has carried its burden. And I think that that showing, when the administrative judge gathers that evidence together, everything that's in the joint appendix, really pushes this over the line pretty easily. And there was some question about CAR Factor 2, which is not addressed directly in any of the briefing, but it comes in in shadows and faints in petitioners' briefs. So there's discussion about retaliation, about conspiracy, about people wanting to act against Ms. Summers. And because it's not directly addressed in their blue brief, not a lot of time is spent on it in ours. But if Your Honors go through the opinion and check the joint appendix sites that are in the administrative judge's opinion, you can see the administrative judge's conclusion in supporting testimony about there's nothing here to support retaliatory animus. We have a series of protected disclosures that were identified by various witnesses. These are the type of things that happen when you set up a new clinic. There was things about getting a memorandum of understanding or getting some equipment done. And these were raised and they were addressed. And then months later, there's an onslaught of various complaints about Ms. Summers, et cetera. And the people who make the decision to go through the process, it's not an immediate decision, it's a process of invoking human relations department, of going to the standards board, which is something that falls under VA regulations, and having Ms. Summers, giving her the ability to present her case and defend herself throughout that process. At each stage, none of the people doing that have any connection to these protected disclosures. And the administrative judge says that when she analyzes CAR Factor 2. There's no finding of animus. And that comes back in CAR Factor 3 when the administrative judge says, look, we have Ms. Brower, the comparador, who has complaints over a lengthy period of time. We have an acute situation with Ms. Summers where there was a flood of complaints, not just from her own department, but coming from outside sources as well. And in their finding that the comparador does not line up or favor Ms. Summers' argument, the administrative judge concludes, almost the last statement of substance in the opinion, that nor is there anything to find that there was a desire to act based on protected disclosures against Ms. Summers versus Ms. Brower. It's just not there. And given all of the evidence here, and given what I really think is a well-reasoned, well-supported decision from the chief administrative judge, we would ask that this court affirm the MSPB's decision. You said a little bit earlier that you were indicating that you thought that the evidence just did not support an inference that there was any retaliatory motive here. But the procedural posture, the findings of the administrative law judge and the procedural posture that we're in seem to me to suggest that there was a contribution of the retaliatory motive to the firing decision. I mean, that's what, at page 24 of the administrative judge's opinion, she says that, accordingly, I find that appellants' protected disclosures were a contributory factor in her removal. So I think you can't really go back and gainsay that finding, can you? Yes, Your Honor. The distinction I was trying to make, I apologize for not being clear on it. The administrative judge applied the standards, knowledge, timing tests, and other things to show that the disclosures and the adverse employment actions, there was a connection. But on the question of animus, on something that, was there some sort of retaliatory motive here? When she looks specifically at that— Are you distinguishing between a retaliatory motive versus a contributory factor, a contributing factor? Because that seems to me a very fine distinction, if one at all. What's the distinction you're attempting to draw here? The distinction I'm attempting to draw is just in terms of the facts that the administrative judge relied on and that evidence, which is what we're looking at here. But I think the administrative judge's opinion, when she looks at these charges from the Summers about people being against her, about people lying, et cetera, that there are key moments in the decision where the judge explicitly states that there's nothing in the record that shows that any of the people that she's talking about had this desire to act against her purposely, to harm her. Would you disagree with the A.J. where she says what Judge Bryson cited and then she shifts the burden, as is proper, to the agency to say that it would have taken the same action, notwithstanding the disclosures? I agree with the administrative judge on that. And that's what you're arguing for? Correct, Your Honor. One other question, and it was alluded to in the appellant's argument. I don't think he spent a lot of time on it, but I was curious about your response. The argument that he makes that despite having articulated the correct clear and convincing evidence standard on page 24, that the judge then effectively imposed a burden on the petitioner in places where, for example, the administrative judge says, I find the appellant has failed to show the witnesses who were provided statements to Ms. Didier or the NPSB did so because they were influenced to do so or that they conspired to fabricate statements. He argues that that constitutes a shifting of the burden. Your comment? Frankly, Your Honor, I think that's more of an attack on a rhetorical choice on the part of the judge in writing the opinion because I think as a fact finder that any fact finder doing the job they're supposed to do properly is lining up the evidence and questioning and interrogating that evidence. And part of it is saying, well, I have this mountain of evidence over here. There's allegations and other things. Is there anything else that I need to petition and point to anything? Am I looking at anything wrong that there's something else I need to consider? Is there anything else here to pull back from that? Well, the question is, is there evidence that makes it not clear and convincing? That's what he's asking. Exactly, Your Honor. And I think that the attack the petitioner raises is more about the ordering of that. It's just that the way the opinion was written, she, the administrative judge, goes through all the evidence and says, well, let's see, is there anything else supporting these charges of lying? Is there anything else here that I need to take into consideration and determine that there wasn't in every instance? Presumably, the government would not be expected to negate evidence of conspiracy and fabrication in the absence of a claim to that effect, I would suppose. I think that's true, too, Your Honor. It seems kind of a natural progression of proof. Maybe this is what you're saying, a natural progression of proof that the government lays out its case. And then if the appellant feels that there's some other reason that needs to be brought to the attention of the fact finder as to why this happened, then it's kind of on the appellant to raise it at least, even though the ultimate burden never shifts. Exactly, Your Honor. I think the term natural progression is exactly how I would put it. It's a fact finder going through the process of reviewing the facts. As a matter of due process, if a party puts on evidence which rises to clear and convincing, the other party gets to say, well, here's evidence that makes it not. Yes. Unless there are any other questions. Thank you. Thank you, counsel. Mr. Vogelsang has some rebuttal time. If I may, Your Honor. If I may have your indulgence for a sort of summary statement. Appellant has proffered that the record shows that the NPSB was supplied with statements from named retaliators based on written statements, not individuals themselves. The record shows that the context of the complaints about Ms. Summers. Run that by me again. Sure. The only people who testified during the NPSB were the named retaliators and the named comparator with Ms. Summers and not the actual complaining subordinates themselves. Are you saying that the complaints are not evidence? No. I'm just saying that the direct evidence from the horse's mouth, if you will, was not presented to the NPSB. And that so there was a filter, a bottleneck, if you will, of the information presented to the NPSB by the named retaliators. You're arguing weight of evidence, aren't you? Yes. The fact that there were more complaints against Ms. Summers versus her comparator that was claimed to be acute is directly related to the fact that those complaints were solicited and requested by the named retaliator. How is that related with your evidence? The same evidence that I mentioned before was that the retaliator, the supervisor, encouraged the subordinate to ask people to come to her. And they came to her. Because there was that request created the number of the complaints. So the acuteness, if you will, was arbitrarily created. Even one of the named persons who gave a statement said that her relationship with Ms. Summers was, quote, the same as any boss-employee relationship, unquote. That's not rising to the level of... What else did she say? She discussed her discomfort with cross-training, which was part of her duties. And this is at appendix page 1530, which relates to the boss-employee relationship between the subordinate. And I don't want to sidestep the clear difference between the named comparator and Ms. Summers. The complaints about the comparator related to patient care. The provision of morphine to an oncology patient that made nurses uncomfortable. At least two nurses under the comparator left the VA because of the comparator. And there was a more than twice industry standard of turnover in the comparator's department. This was not the case with Ms. Summers. And you can find this testimony at appendix page 39 in the judge's decision, as well as in appendix page 1337. Were the events involving the comparator prior to the termination of Ms. Summers or after? Prior and simultaneous. The complaints regarding the comparator span about from the same time period as the termination, going backward 10 months. They may have continued after, but that evidence was excluded. Whereas the time period between the complaints about Ms. Summers and her referral to the NPSB was one month. So another comparison is, despite 10 months of complaints regarding the comparator, there's no referral to the NPSB. After one month of notice of complaints, Ms. Summers was referred to the NPSB. The substance of the complaints was actually not the same because the complaints against the comparator were worse. Okay. And I have 40 seconds that I just wanted to state. Well, you don't have 40 seconds, but we'll give you one last statement. Oh, okay. That's a red light, not a yellow light. It's moving up. I do apologize. My one last statement, and I do apologize, is the judge does get the facts wrong when she states on appendix 39 that the supervisor handled the complaints against Ms. Summers similar to that of the named comparator. That is not the case. The named comparator at appendix 1468 to 1469 clearly testified she did not behave in the same manner toward the comparator as she did to Ms. Summers. I do thank you for the extra one minute and 20 seconds you gave me. Thank you, counsel. We'll take a case on review. All rise. The honorable court is adjourned until tomorrow morning. It's 10 o'clock a.m.